UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO: 7:12-CR-00020-BR

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| HYSEN SHERIFI, ) | |
| SHKUMBIN SHERIFI, ) | |
| NEVINE ALY ELSHIEKH ) | |
| ) | |

This matter is before the court on the government's appeal of and motion to set aside in part U.S. Magistrate Judge James E. Gates's 15 June 2012 order. Defendant Nevine Elshiekh has filed a response in opposition to the motion.

By way of relevant background, on 2 May 2012, Judge Gates ordered the government to produce to defendants all recorded conversations and transcripts thereof, among other things.[1] (See DE # 121 at 2-6.) Significantly, Judge Gates stated:

> b. The court believes that transcription of all the recordings is, in fact, necessary, ultimately because the untranscribed recordings are of limited utility to any party. Defendants indicated their desire for transcripts of all the recordings. While the government stated that it did not intend to transcribe all the recordings as part of its case preparation, the court is skeptical of that claim, particularly in light of the manifest unfamiliarity of its counsel with the evidence in the case.
> c. As the court stated at the conference, it presently believes that the government should have the responsibility of transcribing all the recordings. Assigning that responsibility to the government appears necessary to ensure the orderly administration of this case and, specifically, timely completion of pretrial

---

[1] At that time, the government had represented that it had in its possession approximately 125 hours of recordings. (See 5/2/12 Order, DE # 121, at 2-3.)

> proceedings. Among other reasons, the government obviously has more resources available to it to prepare the transcripts than defendants. Indeed, it is not clear based on representations at the conference that the transcripts can be prepared timely at reasonable expense by any party other than the government. Moreover, the recordings are evidence the government has gathered. It therefore is responsible for making the recordings a part of this case in the first place. Further, preparation by the government and one or more defendants of separate transcripts of the same recordings would not only be wasteful, but would inject unnecessary, potentially time-consuming complexity into the case, including, for example, the potential need for a formal process to compare and reconcile, to the extent possible, differences between the various versions of the transcripts. The use of different transcription providers alone could result in differences requiring time and effort to address.

(Id. at 3-4 (footnote omitted).)

The government filed a motion for reconsideration of the portion of that order requiring the government to produce transcripts of the recorded conversations. (DE # 128.) The government claimed it should only be required to produce copies of the recordings themselves, full translations of the foreign language conversations it intends to use at trial, summaries of the remaining foreign language conversations, and transcripts of the English conversations it intends to use at trial. (Id. at 6-7.) The government noted that it had produced to defendants approximately 99 hours of recordings made prior to defendants' arrest and that, of these hours, it may use up to 37.5 hours at trial (consisting of 8 hours of Albanian recordings and 29.5 hours of English recordings).[2] (Id. at 8, 10-11.) At a subsequent status conference on 29 May, the government stated that it had identified additional pre-arrest recordings of approximately 300 hours, which it had not yet produced to defendants. (6/15/12 Order, DE # 153, at 2.)

---

[2] In its motion for reconsideration, the government also made representations about the approximately 88 hours of recordings made after defendants' arrest. (DE # 128 at 8, 12.) These post-arrest recordings are not at issue now.

2

Upon reconsideration and with defendants' consent, Judge Gates adopted the proposal suggested by the government that it cull from the approximately 300 hours of unproduced, pre-arrest recordings those recordings it deems relevant and produce those culled recordings to defendants.  (See id. at 3.)  Over the government's objection, Judge Gates ordered that the government produce to defendants transcripts of the pre-arrest recordings on a rolling basis and with specified deadlines, with all of the transcripts to be produced no later than 7 September 2012, approximately two months prior to trial.  (Id. at 11-12.)  The government now claims that this portion of the 15 June 2012 order should be set aside because it is contrary to law.

On review of a magistrate judge's decision regarding a non-dispositive matter, the court may set aside any part of the order that is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a).

> As other courts have noted, this standard of review affords great deference to the magistrate judge.
> This standard vests broad discretion in the magistrate judge with regard to the resolution of discovery disputes.  Indeed, the clear error standard allows reversal only where, after review of the entire record, the district court is left with the definite and firm conviction that a mistake has been committed.

United States v. Hackett, No. 1:11CR51, 2011 WL 5244695, at *1 (N.D.W. Va. Nov. 2, 2011) (quoting Baird v. CCDC/CCSCC, No. 2:08–00044, 2008 WL 4999252, at *2 (S.D.W. Va. Nov. 20, 2008)).

Initially, the court agrees with the government that neither Federal Rule of Criminal Procedure 16 nor Brady v. Maryland, 373 U.S. 83 (1963), requires that the government produce

3

full transcripts of recorded conversations in addition to the recordings themselves.³ See United States v. Freedman, 688 F.2d 1364, 1366 (11th Cir. 1982) ("An examination of the express language contained in Rule 16 necessarily directs the conclusion that the rule does not require the government to copy or otherwise expend government funds in order to supply criminal defendants with their requested material. Rule 16 gives the defendants access to the documents so that they may copy the documents should they desire to do so."); United States v. Parks, 100 F.3d 1300, 1308 (7th Cir. 1996) ("There is no requirement under *Brady* that the Government transcribe the entire sixty-five hours of the intercept, much of which contains irrelevant information."). By the same token, however, the court has the authority to order discovery beyond the minimal dictates of Rule 16, which themselves are broader than Brady. See United States v. Caro, 597 F.3d 608, 620 (4th Cir. 2010) (recognizing that Rule 16 which provides the minimum amount of pretrial, criminal discovery is different from Brady), cert. denied, 132 S. Ct. 996 (2012); Freedman, 688 F.2d at 1366 ("Although Rule 16 does not mandate that the government supply the defendants with discovery material, neither does it expressly prohibit the trial court from entering such an order pursuant to its discretionary authority."). As Judge Gates emphasized, the court has inherent authority to supervise discovery in a criminal case– authority that the government does not deny the court possesses. (See DE # 153 at 9-10.) See also United States v. Moussaoui, 483 F.3d 220, 236 (4th Cir. 2007) ("It has long been recognized that federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all

---

³Federal Rule of Criminal Procedure 16(a)(1)(B) sets forth the government's obligation to provide a defendant, upon request, and make available for copying and inspection relevant written and recorded statements of the defendant. Under Brady, the government is required to disclose evidence favorable to an accused upon request, "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

4

others.' Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (citations omitted)).

Judge Gates carefully analyzed and rejected each of the government's arguments against production of transcripts. Notably, he concluded that defense counsel need transcripts to effectively and efficiently represent defendants, preparation would not be unduly expensive, and the government is in a better position to handle the administrative tasks associated with having transcripts prepared. (DE # 153 at 6-9.) Importantly, Judge Gates recognized that "the court can adequately address the government's concern about having to bear the cost of preparing transcripts of recordings it does not plan to use by providing it the opportunity to seek partial payment from defendants— that is, through Criminal Justice Act funds— of the reasonable costs it incurs for such transcripts." (Id. at 8.)

The court agrees with Judge Gates that after considering all the circumstances in this case, the government is in the best position to be responsible for producing transcripts of the pre-arrest recordings in the first instance. This conclusion is further supported by the government's recently filed Notice of Compliance. In that Notice, the government represents that it has met the first deadline required in the 15 June 2012 order and produced transcripts for approximately 48% of approximately 99 hours of pre-arrest recordings. (DE # 191 at 1.) The government points out the circumstances which have slowed finalization of the transcripts:

> First, regarding the recorded jail phone calls, although each of the captured conversations predominantly takes place in English or Albanian, in numerous instances the conversations include combinations of English, Albanian, and Arabic. Such multilingual conversations present a challenge in that they often require multiple translators and/or transcriptionists to complete a single

5

Case 7:12-cr-00020-BR   Document 207   Filed 08/08/12   Page 5 of 8

> recording. This has on occasion required the Government to receive a transcript from one entity and submit it to another for completion.
>
> Second, prior to finalizing transcripts of the audio recordings made by cooperating witnesses, each transcript must go through several levels of review. Special Agents with the Federal Bureau of Investigation (FBI) compare the transcripts as initially received to the audio recordings. Due to their experience and familiarity with listening to the speakers on the recordings, FBI agents have consistently been able to decipher portions of recordings which the transcriptionists may have had difficulty transcribing, and thus not included in the initial transcript. On occasion this has resulted in portions of the transcripts which must be returned to the transcriptionist for a second assessment. For greater accuracy, agents then review each transcript with the audio recording along side the cooperating witness. These meetings average 1.5 to 2 hours to review 1 hour of the audio recording. Once this review is done, agents make the necessary changes to the transcript.

(Id. at 2-3.) This information emphasizes why the government, not defendants, is in the best position to be responsible for production of the transcripts.

Finally, the court must address the government's professed belief that Judge Gates's order does not require it to produce transcripts of Jencks material contained within the approximately 300 hours of additional pre-arrest recordings.[4] (See DE # 168 at 6.) There is no doubt that Judge Gates's order regarding transcripts covers these recordings. The portion of the order which the government contends should be set aside is entitled "Transcripts of Pre-Arrest Recordings (both produced and unproduced)." (DE # 153 at 5.) At the time of the order, as noted previously, the government had identified an additional 300 hours of pre-arrest recordings that it had not yet produced to defendants, hence Judge Gates's use of the word "unproduced" in

---

[4]The Jencks Act, 18 U.S.C. § 3500, requires the government to disclose "any statement" made by one of its witnesses that "relates to the subject matter" of that witness's testimony. Id. § 3500(b).

the title of the portion of the order at issue here.[5] He explicitly ordered that "all pre-arrest recordings" be produced. (Id. at 11 (emphasis added).) Furthermore, within the body of that portion of the order, as a ground for modification of the 2 May schedule for transcript preparation, Judge Gates recognized that the then-existing schedule, which included specified hours to be completed at each deadline, was no longer feasible "because of the potential need to transcribe some of the 300 hours of unproduced recordings." (Id. at 10-11.) As the government had not yet culled the recordings, it was of course unknown how many hours would need to be transcribed. The government's belief that the order does not require it to transcribe the additional pre-arrest recordings is unfounded.

Additionally, the court rejects the government's contention that, at any rate, it should not be required to transcribe those recordings because they contain Jencks Act material. Although the Jencks Act does not require production of recorded witness statements in a specific format or something other than their original format, see 18 U.S.C. § 3500(e) (defining "statement" to include "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement" (emphasis added)), it does not expressly prohibit a court from ordering production in another format. Again, it is within the court's inherent authority to order production of transcripts of the pre-arrest recordings.

The court finds that the 15 June 2012 order is not contrary to law, and the government's motion to set aside part of that order is DENIED. The order is AFFIRMED. Accordingly, the government shall produce to defendants transcripts of the pre-arrest recordings, including

---

[5] In accordance with that order, on 13 July, the government produced to defendants the recordings it had culled from those 300 hours for relevancy. (Notice, DE # 186.)

7

transcripts of the recordings culled from the approximately 300 hours of pre-arrest recordings, as set forth in the 15 June 2012 order.

This 8 August 2012.

_____
W. Earl Britt
Senior U.S. District Judge