UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO: 7:12-CR-00020-BR

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SHKUMBIN SHERIFI, | ) | |
| NEVINE ALY ELSHIEKH | ) | |

This matter is before the court on defendants' motions to sever and the government's motion to disqualify defendant Nevine Elshiekh's ("Elshiekh") counsel. The motions have been briefed, and the court held a hearing on the motions on 4 September 2012. The motions are addressed in turn.

I. MOTIONS TO SEVER

Defendants are charged jointly with a number of counts, including conspiracy, arising out of an alleged plot to hire an individual to murder others, including a witness who testified in defendant Hysen Sherifi's ("Hysen")[1] trial, Case No. 5:09-CR-216-FL. Elshiekh requests that her trial be severed from Hysen's trial. Defendant Shkumbin Sherifi ("Shkumbin") seeks severance of his trial from Elshiekh and Hysen's trial. Elshiekh takes no position on whether Shkumbin's trial should be severed from hers. (See 9/4/12 Tr., DE # 244, at 15.) Hysen, who is proceeding *pro se*, has filed nothing to indicate his position on the issue of severance. The government opposes severance of any defendant's trial.

---

[1] Because defendants Hysen Sherifi and Shkumbin Sherifi are brothers having the same last name, the court refers to each by his first name.

"[T]here is a presumption in favor of joint trials in cases in which defendants have been indicted together." United States v. Medford, 661 F.3d 746, 753 (4th Cir. 2011) (citations omitted). In fact, "[j]oinder is highly favored in conspiracy trials." United States v. Chorman, 910 F.2d 102, 114 (4th Cir. 1990) (citation omitted). "Under these circumstances, severance generally is granted only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Dinkins, __ F.3d __, No. 09-4668, 2012 WL 3292417, at *7 (4th Cir. Aug. 14, 2012) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)).

    A.    *Elshiekh's Motion*

Elshiekh seeks severance of her trial from Hysen's trial on ground that she needs his testimony at her trial. As such, she must establish:

> (1) a bona fide need for the testimony of [Hysen], (2) the likelihood that [Hysen] would testify at a second trial and waive his Fifth Amendment privilege, (3) the substance of [Hysen's] testimony, and (4) the exculpatory nature and effect of such testimony.

United States v. Parodi, 703 F.2d 768, 779 (4th Cir. 1983) (citation omitted).

Of significance here is the fourth factor. Regarding this factor, the Fourth Circuit has explained that the movant must come forward with "more than a 'vague and conclusory statement . . . of purely cumulative or negligible weight or probative value.'" United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995) (quoting Parodi, 703 F.2d at 780) (omission in original). Rather, "[t]he movant's showing . . . must be sufficiently definite . . . ." Id. Conclusory assertions of the movant's innocence and self-serving statements on the part of the testifying co-

2

defendant are not sufficient.  See United States v. Pursley, 577 F.3d 1204, 1216-17 (10th Cir. 2009) (holding that district court did not abuse its discretion in denying the defendant's motion to sever because the co-conspirators' declarations that they did not conspire with the defendant are "conclusory assertion[s] of innocence lack[ing] the requisite exculpatory value to require severance"), cert. denied, 130 S. Ct. 1098 (2010); United States v. Novaton, 271 F.3d 968, 989-91 (11th Cir. 2001) (holding that district court did not abuse its discretion in denying the defendant's motions for severance based on co-defendants' affidavits which contained conclusory denials of the charges rather than specific facts exonerating the defendant and incriminating the affiants); United States v. Stowers, No. CRIM. A. 2:04-00162, 2005 WL 3466036, at *3-4 (S.D. W. Va. Dec. 19, 2005) (finding that two co-conspirator/defendants' testimony about not engaging in illegal conduct with anyone, including the moving defendant, was too general, self-serving, and lacking evidentiary force to overcome policies against severance).

Turning to the proffered testimony in this case,[2] at the hearing and on direct examination, Hysen testified in relevant part as follows.

> Q. Mr. Sherifi, are you a defendant in this case?
> A. Yeah.
> Q. Some time back in July did you have a conversation with Ms. Moreno? Do you remember that?
> A. Yeah.
> Q. In that conversation did you relate to her that as far as you knew Nevine Elshiekh knew nothing about what was going on?
> A. None of them knew what was going on, but I don't --
> . . . .

---

[2] The court notes that in its opposition brief, the government initially argues that the court should not consider the declaration of Elshiekh's counsel Linda Moreno, which was filed in support of the motion to sever and which sets forth what testimony purportedly would be elicited from Hysen. Because Hysen testified at the hearing on the instant motions, Moreno's declaration is now irrelevant to resolving the motion to sever.

3

> A. None of them knew what was going on, but this is a creation from the cons, the FBI cons, so this is their conspiracy.
> Q. I understand. But did you tell her that -- when you say "none of them," do you mean your brother, Shkumbin, as well?
> A. Exactly.
> Q. And you mean Nevine Elshiekh did not have knowledge of what was going on?
> A. Of course.
> Q. And are you willing to testify to that if this trial severed?
> A. I guess, yeah. . . . .
> . . . .

(9/4/12 Tr., DE # 244, at 4-5.)

On the government's cross-examination, he further testified:

> Q. Mr. Sharif[i], you had the opportunity to testify in a trial U.S. v. Subasic a few months ago, is that correct?
> A. Yeah.
> Q. Was that a yes or no?
> A. Yes.
> Q. And during that trial you answered questions on direct examination, the examination of Mr. Subasic, isn't that right?
> A. Yes.
> Q. And in that trial isn't it also true that when the government cross examined you, you refused to answer their questions as asked?
> A. Of course. Why would I answer lies? Just like you asking me is a bunch of lies. This case is your creation, your conspiracy. You conspired against us and you try to make it look like we did something.
> . . . .
> Q. Continue Mr. Sherifi.
> A. Like I said, this is your conspiracy. This is your crimes. It's not our crimes. It's your crimes. You're the con artist of these crimes.
> Q. And, so, in fact, it would be your testimony that according to our crimes, as you're calling them, none of you are guilty, is that right?
> A. Of course none of us are guilty. You are the guilty ones. You are the disbelieve in people. First of all, you disbelieve in Allah continuously. You don't know. Yet continuous proof that this is from the Lord. That is your first crime that you're a disbeliever, you refuse to believe in the ones of our Lord.

4

> Q. And this, in fact, would be your testimony at trial, isn't that right?
> A. I will testify, I will say what I will say. And one thing I want to make clear, that I warn you in the name of Allah that if you people do not return to the Lord and worship Allah, he is going to severe -- severely punish you. And you're gonna see who punishes, man or the divine punishment, which one -- which one is more severe.

(Id. at 6-8.)

This testimony is not enough to justify the severance of Elshiekh's trial from Hysen's trial. First, it is lacking any detail. It only amounts to a general assertion of Elshiekh's innocence. Second, Hysen attempts to exculpate himself, by placing blame on the government for the entire conspiracy. Third, considering Hysen's testimony as a whole, it is lacking credibility, and thus, its exculpatory effect is minimal. In sum, Elshiekh has not overcome the presumption in favor of joint trials in conspiracy cases.

    B.    *Shkumbin's Motion*

Shkumbin has raised a number of grounds in support of his motion to sever. First, he argues that his trial should be severed from Elshiekh's trial because their defenses are so diametrically opposed such that the jury will be forced to disbelieve Elshiekh's defense in order to believe his defense. In this regard, the Fourth Circuit Court of Appeals has recognized,

> [M]utually antagonistic defenses are not necessarily prejudicial. Hostility among defendants, and even a defendant's desire to exculpate himself by inculpating others, do not of themselves qualify as sufficient grounds to require separate trials. Instead, "[t]here must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

Dinkins, 2012 WL 3292417, at *8 (citations omitted).

Specifically, Shkumbin represents that his defense is "that he did not know the scope of the conspiracy and that he, unwittingly, was influenced to commit the acts the Government contends establish his culpability." (Mem., DE # 192, at 2.) According to him, "Elshiekh will contend that the co-defendants (brothers) took advantage of her emotional connection with Hysen Sherifi and caused her to unwittingly commit the acts the Government contends." (Id. at 2-3.) These defenses, while certainly conflicting in part, amount to finger pointing and do not require the jury to believe one over the other. Rather, the jury might very well believe that Hysen caused them both to unwittingly take some actions which the government contends were in furtherance of the alleged plot. Under these circumstances, severance of Shkumbin's trial from Elshiekh's trial is not required. See United States v. Lighty, 616 F.3d 321, 348-49 (4th Cir. 2010) (recognizing that defenses in kidnapping and conspiracy (and aiding and abetting) case were not mutually antagonistic where conviction of neither defendant rested exclusively on the jury's acceptance of the defense of the other defendant).

Next, Shkumbin asserts that his trial must be severed from Hysen's trial based on recorded statements Hysen made to a confidential informant which incriminate Shkumbin and, if admitted at a joint trial, would violate Shkumbin's Sixth Amendment right of confrontation. (Mem., DE # 192, at 6.)

> *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), holds that a defendant's sixth amendment right to confront the witnesses against him is violated when an out-of-court statement from his co-defendant, which incriminates the defendant, is admitted into evidence at their joint trial, at which the co-defendant does not testify. . . . [T]he *Bruton* rule does not apply if the nontestifying co-defendant's statement is admissible against the defendant under the co-conspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E). Under Rule 801(d)(2)(E), a statement of the defendant's

6

> co-conspirator is admissible against the defendant if it was made "during the course of and in furtherance of the conspiracy." As interpreted, the Rule permits admission of a coconspirator statement if the court finds (i) that the defendant and the declarant were involved in a conspiracy with each other at the time the statement was made; and (ii) that the statement was made in furtherance of that conspiracy. The party seeking to introduce the co-conspirator statement bears the burden of establishing these preliminary facts for admissibility, but it need only do so by a preponderance of the evidence. . . .
> . . . .
> A statement by a co-conspirator is made "in furtherance" of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect. Statements made by a co-conspirator to a third party who is not then a member of the conspiracy are considered to be "in furtherance" of the conspiracy if they are designed to induce that party either to join the conspiracy or to act in a way that will assist it in accomplishing its objectives, but not if they were intended to be nothing more than idle chatter or casual conversation about past events. Whether a particular statement to a third party was intended to induce that party to join or assist the conspiracy, hence was "in furtherance" of it, must be determined by careful examination of the context in which it was made. . . .

United States v. Shores, 33 F.3d 438, 442-44 (4th Cir. 1994) (footnote and citations omitted), cert. denied, 514 U.S. 1019 (1995).

The only recorded statement of Hysen that the court has before it appears to have been made during the time of the alleged conspiracy. (See 9/4/12 Hr'g, Gov't Ex. 1 (stamp indicating date from 1/2/12 to 1/6/12).) Hysen's statement that his brother knew "what's going on" was in the course of a discussion between Hysen and the confidential informant, who were both imprisoned at the time. At the time, Hysen, as a member of the alleged conspiracy, apparently believed that the confidential informant was assisting him (Hysen) with hiring someone to kill certain persons. They were discussing whether the person hired to commit the murders could trust the persons who were gathering money on Hysen's behalf to pay that person for the murder.

7

(See id.) Those persons allegedly gathering money for Hysen were Elshiekh and Hysen's brother Shkumbin. Hysen's statement to the confidential informant was made so that the confidential informant would continue to assist Hysen in hiring someone to commit the murders. Thus, Hysen made the statement in furtherance of the conspiracy, and it is admissible under Federal Rule of Evidence 801(d)(2)(E). As such, <u>Bruton</u> is not implicated, and severance is not required.

Shkumbin also urges the court to sever his trial from Hysen's trial due to what he characterizes as unfairly prejudicial evidence, that is, Hysen's status as a "convicted terrorist" who was awaiting sentencing at the time of the events alleged in the instant indictment. (Mem., DE # 192, at 7-8.) Shkumbin argues that he could not receive a fair trial if he were jointly tried with Hysen and such evidence were admitted against Hysen, notwithstanding any limiting instruction. (<u>Id.</u> at 3-4, 8.) The court agrees with the government that this evidence will be admissible against Shkumbin, even if he were tried alone, as it is relevant to why the conspiracy originated in the first instance. And, even if the evidence was only admissible against Hysen, that alone does not justify severance of Shkumbin's trial from Hysen's trial. <u>See</u> <u>United States v. Masiarczyk</u>, 1 F. App'x 199, 209 n.9 (4th Cir. 2001) (unpublished) (noting in a conspiracy case where evidence of one co-defendant's conviction was admitted only against that co-defendant, "the mere fact that evidence against one or more defendants is stronger or more inflammatory than the evidence against other defendants does not warrant severance." (citing <u>United States v. Hall</u>, 93 F.3d 126, 131 (4th Cir. 1996)).

Finally, at the motions hearing, Shkumbin's counsel also raised the ground that Shkumbin needs Hysen's testimony at his trial. (9/4/12 Tr., DE # 244, at 16-17.) At the

8

hearing, Hysen testified on direct examination by Shkumbin's counsel as follows.

> Q. Mr. Sherifi, just to clarify something, sir. When you were referring to the other gentleman that did not know of any illegal activity like Ms. Elshiekh, you were talking about your brother Shkumbin Sherifi, is that correct?
> A. I don't believe there's anybody else left.

(Id. at 9.) For the reasons stated with respect to Elshiekh's motion to sever, the court concludes that severance is not warranted based on this testimony. Additionally, on the issue of Shkumbin's involvement, Hysen's testimony can be impeached. In a recorded conversation with a confidential informant, Hysen stated that his brother *did* know what was going on. (9/4/12 Hr'g, Gov't Ex. 1.) The fact that Hysen's testimony in support of Shkumbin can be impeached weighs against the exculpatory effect of that testimony and further supports denial of Shkumbin's motion to sever. See Parodi, 703 F.2d at 780 (in considering the exculpatory nature and effect of a co-defendant's proffered testimony, the court may assess the extent to which that testimony could be impeached).

## II. GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

The government moves to disqualify Elshiekh's co-counsel Linda Moreno. The Fourth Circuit has summarized the law in this area:

> In *Wheat v. United States*, the Supreme Court explained that "[w]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." The paramount concern is the judiciary's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Thus, a district court may disqualify a defendant's counsel of choice in spite of an express waiver by that defendant of any conflict of interest.

9

> In evaluating a district court's exercise of discretion, we are mindful that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." As a result, district courts "must be allowed substantial latitude in refusing waivers of conflict of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Accordingly, "while recognizing 'a presumption in favor of petitioner's counsel of choice,' the *Wheat* Court found that such a 'presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'"

United States v. Urutyan, 564 F.3d 679, 686-87 (4th Cir. 2009) (citations omitted).

The government contends that Moreno should be disqualified because her declaration, filed in support of Elshiekh's motion to sever, creates the possibility that she may be called as a witness at trial and thus a serious potential conflict of interest has been created. In pertinent part, Moreno's declaration reads:

> 5. Prior to commencement of a joint status conference on May 29, 2012, I was seated next to Mr. Hysen Sherifi at the defense table. After affirming that Mr. Sherifi was representing himself and not represented by counsel, I then asked Mr. Sherifi whether he would be willing to speak with me and he agreed.
> 6. With Mr. Sherifi's permission I then interviewed him to ascertain whether Mr. Sherifi had ever informed Ms. Elshiekh of his true plans and intentions as alleged in the indictment to pay a third party to kill at least one of the witnesses from his trial.
> 7. During the interview, I questioned Mr. Hysen Sherifi as to whether Ms. Elshiekh had any knowledge regarding the plan. Mr. Hysen Sherifi stated at least twice that Ms. Elshiekh had no knowledge of the plan.
> 8. Specifically, I asked Mr. Sherifi if Ms. Elshiekh was a part of any plot or conspiracy to murder anyone. He responded, "No, she was not." Later during a break, I again spoke with Mr. Sherifi and repeated my question whether Ms. Elshiekh knew anything about any plots as alleged in this

10

> so-called conspiracy. He responded, "Nevine didn't know anything[."]
> 9. In addition to denying that Ms. Elshiekh had any knowledge of the true nature of his plans, Mr. Sherifi further explained that Ms. Elshiekh was under the belief that she was assisting him with his appeal and that the money that she contributed from the sale of her jewelry and other sources would be used to pay an attorney.

(DE # 194.)

Given that at the instant motions hearing Hysen testified consistently with the foregoing (and with his prior recorded statements) about Elshiekh's lack of knowledge and appears willing to testify on her behalf even in a joint trial, it is highly unlikely Elshiekh would be put in a position of calling Moreno as a witness on her behalf. It is also unlikely the government would call Moreno as a witness. Her testimony supports Elshiekh's defense and would add very little in terms of evidence against Hysen himself. The government has not shown a serious potential for conflict exists, and therefore, its motion for disqualification of Moreno will be denied.

For the foregoing reasons, defendants' motions to sever are DENIED, and the government's motion to disqualify counsel is DENIED.

This 19 September 2012.

_____
    W. Earl Britt
    Senior U.S. District Judge